IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAMONCITO QUINTANA,

                Plaintiff,

vs.                              Case No. 14-1134-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.

MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On February 8, 2013, administrative law judge (ALJ) Christina Young Mein issued her decision (R. at 17-31).[1] Plaintiff alleges that he had been disabled since September 5, 2003 (R. at 17).  Plaintiff meets the insured status

[1] An earlier ALJ decision was issued on April 19, 2011 (R. at 124-135), but it was remanded by the Appeals Council on May 15, 2012 (R. at 169-173).

requirements for social security disability benefits through December 31, 2009 (R. at 17).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since September 5, 2003, the alleged onset date (R. at 19).  At step two, the ALJ found that plaintiff had severe physical and mental impairments (R. at 20).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20).  After determining plaintiff's RFC (R. at 22), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 28).  At step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 28-29).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30-31).

**III.  Did the ALJ err at step five in finding that plaintiff could perform jobs that exist in significant numbers in the national economy?**

Included in her RFC findings, the ALJ stated that plaintiff cannot reach overhead with the right upper extremity, or lift anything over 25 pounds with the right upper extremity. Plaintiff can occasionally reach in all directions with the dominant, right upper extremity, occasionally finger, frequently handle, and frequently feel (R. at 22).  In her decision, the ALJ, relying on vocational expert (VE) testimony, stated that plaintiff could perform three jobs:

5

|  | jobs in state | jobs nationally |
|---|---|---|
| 1) folding machine operator | 900 | 75,500 |
| 2) garment sorter | 440 | 27,500 |
| 3) routing clerk | 500 | 75,900 |
| TOTAL | 1,840 | 178,900 |

(R. at 29).  The ALJ found that plaintiff could perform work that exists in significant numbers in the national economy (R. at 30).

However, the 2nd hypothetical question, which led the VE to testify that plaintiff could perform the above 3 jobs, eliminated a limitation on occasional reaching in all directions (R. 64-65).[2]  The 1st hypothetical question, which included a limitation that: "reaching limited to occasional," resulted in a finding that plaintiff could perform only 1 job:

|  | jobs in state | jobs nationally |
|---|---|---|
| 1) shipping/receiving weigher | 365 | 31,500 |

(R. at 63-64).

In a 3rd hypothetical question, in which occasional reaching was only limited to the dominant right hand, the VE testified that plaintiff could perform the jobs of garment sorter and shipping/receiving weigher (R. at 64, 65).  In his RFC findings, the ALJ stated that claimant "can occasionally reach in all directions with the dominant, right upper extremity" (R. at 22).

---

[2] All of the hypothetical questions included a limitation that plaintiff could not reach overhead with the right upper extremity, which was a part of the ALJ's RFC finding (R. at 22, 63-65).

Thus, the ALJ erred by indicating in his decision that a person with plaintiff's RFC could perform the 3 jobs identified in the 2nd hypothetical question (folding machine operator, garment sorter, and routing clerk).  The ALJ found that plaintiff can only occasionally reach in all directions with the right upper extremity.  However, the 2nd hypothetical question was based on not including a limitation on occasional reaching in all directions (with either upper extremity).  Only the 1st and 3rd hypothetical questions incorporated a limitation to only occasional reaching in all directions with the dominant, right upper extremity.  Thus, based on the VE testimony, plaintiff could only perform the following jobs:

|  | jobs in state | jobs nationally |
|---|---|---|
| 1) shipping/receiving weigher | 365 | 31,500 |
| 2) garment sorter | 440 | 27,500 |
| TOTAL: | 805 | 59,000 |

The Commissioner disputes plaintiff's assertion that there were only two jobs identified by the VE matching the ALJ's RFC determination (Doc. 16 at 14-15).  However, as noted above, it is clear that the 2nd hypothetical question, which formed the basis for the ALJ's finding that plaintiff could perform the three jobs listed in the ALJ decision, did not include a limitation that plaintiff could only occasionally reach in all directions with the right upper extremity.  With that limitation

included, the VE testified that plaintiff could only perform the jobs of shipping/receiving weigher and garment sorter.

Alternatively, the Commissioner argues that the two remaining positions equates to a total of 59,000 jobs in the national economy.  The Commissioner argues that this constitutes a significant number of jobs in the national economy; therefore, any error by the ALJ in her decision that plaintiff could perform 3 jobs with 178,900 of those jobs available in the national economy is harmless error.

The statute and case law are clear that the Commissioner must show that the claimant can perform other kind of work that exists in significant numbers in the national economy.  See Raymond v. Astrue, 621 F. 3d 1269, 1274 (10th Cir. 2009).  The proper focus generally must be on jobs in the national, not regional, economy.  The Commissioner is not required to show that job opportunities exist within the local area.  Raymond v. Astrue, 621 F.3d at 1274.  The question for the court is whether, on the facts of this case, the ALJ's error regarding the number of jobs that plaintiff can perform given the RFC limitations established by the ALJ constitutes harmless error.

The ALJ found that plaintiff could perform 3 jobs, of which 1,840 existed in Kansas and 178,900 existed in the national economy.  However, the VE testified that, in light of the ALJ's

RFC findings, plaintiff could perform 2 jobs, of which 805 existed in Kansas and 59,000 existed in the national economy.

Courts should apply the harmless error analysis cautiously in the administrative review setting.  Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

In Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992), the court refused to draw a bright line establishing the number of jobs necessary to constitute a "significant number." The court set out several factors that go into the proper evaluation of what constitutes a significant number, including the level of a claimant's disability, the reliability of the VE testimony, the distance claimant is capable of travelling to engage in the assigned work, the isolated nature of the jobs, and the types and availability of such work.  Id.  Judicial line-drawing in this context is inappropriate, and the determination of a numerical significance entails many fact-

specific considerations requiring individualized evaluation.
Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004).  The
decision should ultimately be left to the ALJ's common sense in
weighing the statutory language as applied to a particular
claimant's factual situation.  Allen, 357 F.3d at 1144; Trimiar,
966 F.2d at 1330.

In Trimiar, the court found that the ALJ gave proper
consideration to the factors that go into the evaluation of what
constitutes a significant number, and upheld the ALJ's decision
that 650-900 jobs in the state of Oklahoma constitutes a
significant number of jobs.  966 F.2d at 1330-1332.  By
contrast, in Allen, the ALJ had found that plaintiff could
perform 3 jobs that exist in significant numbers.  However, the
VE had testified that claimant could only perform 1 of those
jobs (surveillance systems monitor) given the RFC limitations
set forth by the ALJ.  There were only 100 surveillance systems
monitor jobs in the state.  Id. at 1143-1144.  In light of the
ALJ's failure to consider whether 100 jobs constituted a
significant number in connection with the Trimiar factors, the
court declined to find harmless error, stating that it would be
an improper exercise of judicial factfinding rather than a
proper application of harmless-error principles.  The court held
that it is the ALJ's primary responsibility to determine what
constitutes a significant number of jobs in light of the various

case-specific considerations outlined in Trimiar.   Allen, 357
F.3d at 1145.

In Stokes v. Astrue, 274 Fed. Appx. 675, 683-684 (10th Cir.
April 18, 2008), the court found that plaintiff could only
perform 2 of the 4 jobs identified by the ALJ.   The court noted
that 11,000 of those 2 jobs existed regionally, and 152,000 of
those 2 jobs existed nationally.   The court found that no
reasonable factfinder could have determined that suitable jobs
did not exist in significant numbers in either the region in
which the claimant lived or nationally.

In Chrismon v. Colvin, 531 Fed. Appx. 893, 899-900 (10th
Cir. Aug. 21, 2013), the ALJ had failed to include in his
hypothetical question a limitation to simple, repetitive tasks.
Only 2 of the 4 jobs identified by the VE were consistent with
this limitation.   Regionally, 17,500 of those 2 jobs existed,
and nationally 212,000 of those 2 jobs existed.   On these facts,
the court held that any error in failing include a limitation to
simple, repetitive tasks was harmless error.

In Shockley v. Colvin, 564 Fed. Appx. 935, 940-941 (10th
Cir. April 29, 2014), only 2 of the 4 jobs identified by the VE
and the ALJ were consistent with the claimant's limitations.
Regionally, 17,000 of those 2 jobs existed, and 215,000 of those
2 jobs existed nationally.   On these facts, the court found that
the inclusion of other jobs by the ALJ was harmless error.   See

also Bainbridge v. Colvin, ___ Fed. Appx. ___, 2015 WL 4081204 (10th Cir. July 7, 2015 at *6)(harmless error when remaining jobs totaled 20,000 jobs in the state and 500,000 nationally); Anderson v. Colvin, 514 Fed. Appx. 756, 764 (10th Cir. April 4, 2013)(harmless error when remaining jobs totaled 5,900 in the state and 650,000 nationally); Johnson v. Barnhart, 402 F. Supp.2d 1280, 1284-1285 (D. Kan. 2005)(the range of remaining jobs which plaintiff can perform is from 3,040 in the state and 212,000 nationally; court held this was sufficient to show that work exists in significant numbers).

However, in Chavez v. Barnhart, 126 Fed. Appx. 434, 436-437 (10th Cir. Feb. 3, 2005), the ALJ had found that plaintiff could perform 3 jobs; however, only 1 job was properly identified as suitable for the claimant.  The VE testified that there were 49,957 of these jobs nationally, and only 199 in the region. The court, noting that the number of jobs available in the region is relatively small, declined the invitation to find harmless error on the ground that the number of jobs is significant as a matter of law, and remanded the case for a determination of whether the number of jobs is sufficient to qualify as significant.

In Vyskocil v. Astrue, 2012 WL 2370200 at *3 (D. Kan. June 22, 2012), the court held that the ALJ erred by failing to consider the opinion of Dr. Goering, who had opined that

plaintiff was limited to occasional fingering.  With this limitation, only one job would remain available; 450 of those jobs were available in Kansas and 55,000 in the national economy.  The court noted that the ALJ had not made a determination of whether this number of jobs constituted a significant number of jobs.  The court, after citing to Trimiar, Allen, Raymond and Chavez, remanded the case in order for the ALJ to explain the weight to be accorded to Dr. Goering's opinion, and if he accepted the limitation, to determine if there are a significant number of jobs available in the economy to a person with such a limitation.  See also Evans v. Colvin, 2014 WL 3860653 at *4-5 (D. Colo. Aug. 6, 2014)(remaining jobs totaled 272 in the region and 18,000 nationally; court, citing to Chavez, and ALJ's failure to discuss Trimiar factors, held that it could not rule as a matter of law that 18,000 jobs is so significant that no reasonable factfinder could reach the opposite conclusion; the court noted that while it would not be surprised if the ALJ determined that 18,000 jobs is sufficient, that decision is for the ALJ to make, not the court).

In summary, the 10th Circuit has not drawn a bright line establishing the number of jobs necessary to constitute a significant number of jobs.  In general, that determination should be made by the ALJ after considering a number of factors, and weighing the statutory language as applied to a particular

claimant's factual situation.  However, in a number of cases, the 10th Circuit determined that the ALJ committed harmless error because the court found that when the remaining number of jobs regionally range from 11,000 to 17,500 and nationally range from 152,000 to 215,000 (Stokes, Chrismon, and Shockley), no reasonable factfinder could have determined that a suitable number of jobs do not exist in significant numbers.

On the other hand, in Chavez, the 10th Circuit determined that when the remaining number of jobs was 199 in the region and 49,957 nationally, the court declined to find harmless error and remanded the case in order for the ALJ to make a determination of whether the remaining number of jobs was sufficient to qualify as a significant number of jobs.  In Vyskocil, Judge Lungstrum held that when the remaining number of jobs was 450 in the state and 55,000 in the national economy, the court declined to find harmless error and remanded the case.

In the case before the court, the remaining number of jobs is 805 in the state and 59,000 nationally.  Thus, the remaining number of jobs is much closer to the figures in Chavez and Vyskocil than the figures in Stokes, Chrisman, and Shockley. Based on the facts of this case, and the guidance provided by the cases cited above, the court declines to find harmless error on the ground that the remaining number of jobs is significant as a matter of law, and remands the case in order for the ALJ to

14

determine whether the remaining number of jobs qualifies as a significant number of jobs under the statute.

Plaintiff also takes issue with testimony from the vocational expert that relied on a labor market survey and her limited observation of persons in certain jobs and placing people in certain jobs.  The court has carefully reviewed the transcript of the VE testimony (R. at 63-72), and finds that plaintiff's objections go to the weight of the VE's testimony, and not its admissibility.

## IV.  Did the ALJ err in her consideration of the medical opinion evidence regarding plaintiff's RFC?

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting

physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not

inconsistent with other substantial evidence in the record.
Castellano v. Secretary of Health & Human Services, 26 F.3d
1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2).  When a treating physician opinion is not given
controlling weight, the ALJ must nonetheless specify what lesser
weight he assigned the treating physician opinion.  Robinson v.
Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating
source opinion not entitled to controlling weight is still
entitled to deference and must be weighed using all of the
following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good
reasons in his/her decision for the weight he/she ultimately
assigns the opinion.  If the ALJ rejects the opinion completely,
he/she must then give specific, legitimate reasons for doing so.
Watkins, 350 F.3d at 1301.

Plaintiff's arguments regarding the RFC findings of the ALJ and the weight accorded to the medical opinion evidence is focused on plaintiff's mental impairments and limitations. Plaintiff alleges error by the ALJ in her evaluation of the opinions of advanced register nurse practitioner (ARNP) Yong Cork, a treatment provider, who provided a mental RFC on September 15, 2010 (R. at 892-893) and on October 26, 2012 (R. at 1165-1166). Plaintiff argues that the opinions of ARNP Cork are consistent with the opinions Dr. Kravitz, a psychologist who reviewed the medical records and testified on April 6, 2011 (R. at 73, 88-93), and Dr. Berg, a psychologist who performed a consultative examination on the plaintiff on August 4, 2010 (R. at 872-878).

The ALJ gave great weight to the opinions of three non-examining state agency medical sources. The first was Dr. Cohen, who prepared a mental RFC assessment on January 27, 2009 (R. at 750-766), and which was affirmed by Dr. Stern on May 28, 2009 (R. at 768). The second was a mental assessment by Dr. Witt on August 11, 2011 (R. at 148-152). The third was a mental assessment by Dr. Stern on November 4, 2011 (R. at 161-165). Dr. Witt and Dr. Stern took into consideration the opinions of Dr. Berg. Dr. Witt stated that the evidence does not support Dr. Berg's opinion that plaintiff would have marked impairments in any job setting (R. at 151). Both Dr. Witt and Dr. Stern

opined that the opinions of Dr. Berg relied heavily on the
subjective report of symptoms and limitations provided by the
plaintiff, and further stated that the totality of the evidence
does not support the opinions of Dr. Berg (R. at 152, 165).  The
ALJ's mental RFC findings reflect the opinions of Dr. Witt and
Dr. Stern that plaintiff had a number of moderate limitations
which resulted in their opinion that plaintiff was capable of
sustained concentration and pace for simple work, and that
claimant may be more successful at employment with limited
interaction with the public, supervisors and coworkers (R. at
22, 150-151, 163-165).  The ALJ's mental RFC findings are also
consistent with the functional capacity assessment of Dr. Cohen,
who opined that plaintiff was limited to simple and intermediate
tasks, and would be best suited for work that could be performed
on a relatively solitary basis, not requiring providing services
to the general public or more than incidental contact with
coworkers (R. at 752).

        The ALJ gave no weight to the opinions of ARNP Cork,
noting that she was not an acceptable medical source.  Although
the ALJ did not expressly state that she was an "other" medical
source as defined in SSR 06-03p, 2006 WLL 2329939, the court
finds that this failure to expressly reference the SSR is not,
of itself, error.  The ALJ did examine the opinions of ARNP
Cork, and found that they were not supported by the record as a

whole, and noted that plaintiff's activities were not consistent with the limitations set forth by ARNP Cork.  ARNP Cork opined that plaintiff had a number of marked mental limitations (R. at 892-893, 1165-1166), as did Dr. Berg (R. at 872-873).  However, Dr. Witt, after his review of the evidence, stated that the evidence did not support Dr. Berg's opinion that plaintiff would have marked impairments in any job setting (R. at 151).

The ALJ also set forth reasons for discounting the opinions of Dr. Berg and Dr. Kravitz (R. at 26-27).  When Dr. Kravitz testified that it is questionable how plaintiff could handle an ordinary level of stress, he went on to say that "I think in part that depends on how credible you find him" (R. at 92).  Both Dr. Witt and Dr. Stern found plaintiff to be only partially credible (R. at 149, 163), and the ALJ found that plaintiff was not entirely credible (R. at 24), noting plaintiff's daily activities, the medical records, and the medical opinion evidence (R. at 24-28).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must

affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The court will not reweigh the medical evidence regarding plaintiff's RFC.  The conclusions of the ALJ regarding the relative weight accorded to the medical opinion evidence are reasonable, and the ALJ's RFC findings are supported by substantial evidence.  The court finds that the balance of the ALJ's analysis of the medical opinion evidence is supported by substantial evidence.  See Barnum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)(while the court had some concerns about the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain household chores, the court concluded that the balance of the ALJ's credibility analysis was supported by substantial evidence in the record).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 6th day of August 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge